

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Cr. No.** _18·20378_ |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **18 U.S.C. § 371** |
| **HYEONG-WON LEE and** | ) | **18 U.S.C. § 1031** |
| **DONG-GUEL LEE,** | ) | **18 U.S.C. § 1343** |
| | ) | **18 U.S.C. § 1956** |
| **Defendants.** | ) | **18 U.S.C. § 1512** |
| | ) | **18 U.S.C. § 2** |
| | ) | |
| | ) | **Forfeiture Allegations** |
| | ) | |

# I N D I C T M E N T

**THE GRAND JURY CHARGES**:
At all times relevant to the Indictment:

## GENERAL ALLEGATIONS

1. The United States Army Corps of Engineers – Far East District ("FED") was an agency of the United States Department of Defense, and part of the United States Government.  FED was based in Seoul, Republic of Korea ("South Korea" or "ROK").

2. FED supervised contracting and construction on United States military installations in South Korea and elsewhere.  FED was responsible for providing engineering, design, construction, and project management services for military and civilian infrastructure and operations in the Asia-Pacific region.

3. FED payments to contractors and subcontractors were sent via bank wire transfer from Department of Defense offices housed at Naval Support Activity Mid-South, which was located in Millington, Tennessee.

## The Camp Humphreys Relocation

4. Since the 1950s, the United States has maintained a substantial military presence in South Korea, including tens of thousands of active duty soldiers, sailors, airmen, and

marines, and civilian personnel. The United States presently stations approximately 28,000 active duty troops in South Korea, in addition to civilian personnel.

5. Beginning in the mid-2000s, the United States Department of Defense and the ROK government created a plan to consolidate U.S. military bases in South Korea. This plan was referred to as the Yongsan Relocation Plan, or YRP. As part of the YRP, the U.S. prepared to expand Camp Humphreys, a large military facility located near the city of Pyongtaek, about 50 miles south of Seoul, ROK's capital.

6. The U.S. Department of Defense designated FED as the contracting representative to award contracts, manage construction, and supervise technical matters related to the YRP.

7. The ROK government designated an agency known as MURO to perform parallel functions to FED on the YRP.

### The Defendants and Related Entities and Individuals

8. SK Engineering & Construction Co., Ltd. ("SK E&C") was a corporation with its headquarters in South Korea. SK E&C performed construction and engineering services in South Korea and around the world.

9. SK E&C was a subsidiary of SK Group, which was one of the largest conglomerates in South Korea. In all years relevant to this Indictment, SK Group accrued billions of dollars in gross revenues. SK E&C participated in joint projects with United States companies and received U.S. government contracts.

10. SK E&C owned subsidiaries and affiliates around the world. In the United States, SK E&C owned 100% of SK E&C USA, a corporation based in Houston, Texas, which was also known as SK E&C America.

11. Defendant HYEONG-WON LEE was a managing director and senior employee at SK E&C, who also used the title "vice president." Defendant HYEONG-WON LEE was a citizen of South Korea and resided in South Korea. At all times relevant to this Indictment, Defendant HYEONG-WON LEE acted within the scope of his employment at SK E&C, and to benefit himself, his co-conspirators, and SK E&C.

12. Defendant DONG-GUEL LEE was an employee of SK E&C. Defendant DONG-GUEL LEE was a citizen of South Korea and resided in South Korea. At all times relevant to this Indictment, Defendant DONG-GUEL LEE acted within the scope of his employment at SK E&C, and to benefit himself, his co-conspirators, and SK E&C.

13. C.W.K. was an employee of SK E&C. C.W.K. was a citizen of South Korea and resided in South Korea. At all times relevant to this Indictment, C.W.K. acted within the scope of his employment at SK E&C, and to benefit himself, his co-conspirators, and SK E&C.

14. Duane Nishiie was a United States citizen, who served as a contracting officer with FED until in or about 2012. From in or about 2012 through in or about 2014, Nishiie worked as a consultant for SK E&C. Nishiie resided in South Korea, and since his retirement from FED, has resided primarily in Hawaii.

15. Seung-Ju Lee was a citizen of South Korea and a former colonel in the South Korean military. Seung-Ju Lee was employed by MURO until in or about 2009, when he retired from the South Korean military.

16. S&Teoul was a company owned by Seung-Ju Lee and others. A primary purpose of S&Teoul was to facilitate the payment and laundering of bribes, kickbacks, and fraud proceeds from SK E&C to Nishiie, Seung-Ju Lee, and others.

17. The Pacific Advisory Group ("PAG") and J*Cube were consulting companies created by members of the conspiracy to facilitate the payment and laundering of bribes, kickbacks, and fraud proceeds from SK E&C to Nishiie, Seung-Ju Lee, and others.

## COUNT ONE
### Conspiracy

18. Paragraphs 1 through 17 of the Indictment are realleged as if incorporated herein.

19. From at least in or about 2008 through in or about 2017, in the Western District of Tennessee and elsewhere, defendants

**HYEONG-WON LEE, and**
**DONG-GUEL LEE,**

and others known and unknown to the Grand Jury, with the intent to further the objects of the conspiracy, did knowingly combine, conspire, confederate, and agree:

    a. to defraud the United States and agencies thereof, that is to hamper, hinder, impede, and obstruct by trickery, deceit, and dishonest means, the lawful and legitimate functions of the United States Department of Defense, United States Army, and United States Department of Justice; and

    b. to commit wire fraud, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud the United States, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions with a duty to disclose, transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

3

c. to commit obstruction of justice, that is, to knowingly use intimidation, threaten, and corruptly persuade another person, and attempt to do so, and engage in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of any person in an official proceeding; and cause and induce any person to withhold testimony, and withhold a record, document, and other object, from an official proceeding, and to alter, destroy, mutilate, and conceal an object with intent to impair the object's integrity and availability for use in an official proceeding, evade legal process summoning that person to appear as a witness, and to produce a record, document, and other object, in an official proceeding; and be absent from an official proceeding to which such person has been summoned by legal process, and attempt to do so, in violation of Title 18, United States Code, Section 1512(b).

## Purpose of the Conspiracy

20. The purpose of the conspiracy was to obtain United States Department of Defense contracts on behalf of SK E&C, to earn profit for SK E&C, the defendants, and their co-conspirators, to conceal the conspiracy, and to obstruct law enforcement and other investigations into the conspiracy.

## Manner and Means of the Conspiracy

21. It was part of the conspiracy that the defendants and their co-conspirators bribed an official with the United States Department of Defense to ensure that government contracts were steered to SK E&C.

22. It was further part of the conspiracy that the defendants and their co-conspirators defrauded the United States Department of Defense, and submitted false claims to the United States Department of Defense, to direct U.S. Government funds as bribes and kickbacks to that public official and others.

23. It was further part of the conspiracy that the defendants and their co-conspirators laundered bribe and kickback money through shell companies to promote SK E&C's activities.

24. It was further part of the conspiracy that the defendants and their co-conspirators took steps to obstruct, impede, and hinder United States and South Korean law enforcement investigations, to prevent the apprehension of co-conspirators and minimize SK E&C's criminal and civil exposure.

## The Defendants' Scheme to Defraud

*SK E&C Bribes Nishiie*

25. Beginning in or about 2008 and continuing through in or about 2014, SK E&C and its agents and employees sought to obtain engineering and construction contracts related to the Camp Humphreys expansion. These contracts were awarded by FED and other agencies of the ROK and United States governments.

26. In 2008, FED prepared to award a large contract for the Camp Humphreys expansion, as part of the YRP. The request for proposals sought bidders capable of executing a large land development, utilities, and infrastructure (LDUI) project which would cover the improvement of land and installation of utilities on an area of Camp Humphreys known as Parcel 2A. The contract was referred to as the "LDUI-Parcel 2A" contract.

27. The LDUI-Parcel 2A contract was one of the first large contracts awarded by FED as part of the YRP. Nishiie, in his official capacity at FED, was responsible for evaluating bids and recommending which bidder would receive the contract. Seung-Ju Lee served as a MURO representative during the award process.

28. Several large South Korean construction and engineering companies bid for the contract. In or about November 2008, SK E&C submitted a bid for the contract. SK E&C had never before received a large FED contract.

29. SK E&C, through defendant HYEONG-WON LEE and others, agreed to pay Nishiie money, and other things of value, as bribes and kickbacks, in exchange for Nishiie influencing the LDUI-Parcel 2A contract award process on behalf of SK E&C.

30. On or about September 18, 2008, Nishiie prepared and submitted a "Source Selection Decision Memorandum" to his superiors at FED, narrowing the number of eligible bidders for the LDUI-Parcel 2A contract from twelve companies to five, including SK E&C.

31. On or about December 19, 2008, Nishiie prepared a "Source Selection Decision" for his superiors, recommending the award of the LDUI-Parcel 2A contract to SK E&C.

32. Nishiie influenced the award process for the LDUI-Parcel 2A contract by rating SK E&C's bid more favorably than any other bid and recommending SK E&C's selection for the LDUI-Parcel 2A contract.

33. On or about December 24, 2008, FED awarded the LDUI-Parcel 2A contract to SK E&C. The total value of the contract at the time was approximately 460 billion Korean won, equivalent to over $400,000,000.

34. SK E&C has performed work on the LDUI-Parcel 2A contract since 2009, and has billed the United States Government for over $700,000,000 in work on the contract.

35. In or about 2010, FED, alongside the Korean Ministry of Defense, managed the process for awarding a contract for construction of a project management office at Camp Humphreys. The contract was referred to as Joint Task Order 16 ("JTO-16"). JTO-16's initial value was estimated to be approximately over 6 billion Korean won, or approximately $6,000,000.

36. Nishiie was the primary U.S. Government official supervising the solicitation of bids and award of the contract related to JTO-16. Nishiie took steps, in his official capacity, to influence the JTO-16 award process and assist SK E&C in obtaining the JTO-16 contract.

37. On or about March 22, 2010, SK E&C submitted a bid for construction under JTO-16. SK E&C was the sole bidder for the JTO-16 project.

38. SK E&C was awarded the JTO-16 contract, and was ultimately paid more than $6,000,000 for its work on the contract.

39. As part of the scheme, Nishiie influenced official acts of the United States Government, by ensuring that the selection of JTO-16 was made through a "sole source" process that increased the chances of it being awarded to SK E&C.

40. The LDUI and JTO-16 contracts involved the acquisition, care, handling, custody, control and disposition of any real and personal property of the United States.

*The Fraudulent S&Teoul Subcontract*

41. In or about 2010, Defendant HYEONG-WON LEE, Nishiie, and Seung-Ju Lee discussed creating a fraudulent construction subcontract, which would allow SK E&C to direct bribes and kickbacks to Nishiie while concealing the bribery scheme.

42. Seung-Ju Lee and others created a construction company called S&Teoul. S&Teoul, which was based in South Korea, served as a means to launder bribes and kickbacks from SK E&C to Nishiie. Seung-Ju Lee was the President of S&Teoul.

43. In or about 2010, SK E&C, at the instruction of Defendant HYEONG-WON LEE, awarded two subcontracts to S&Teoul for construction work related to the YRP, valued at over $3,000,000.

44. S&Teoul did not perform the work called for by the subcontracts. Rather, SK E&C, and other subcontractors, performed the work that the subcontracts required of S&Teoul.

45. To obtain the funds to pay kickbacks to Nishiie through S&Teoul, SK E&C submitted documents to FED and the Department of Defense. These documents, which were created at the direction of defendant HYEONG-WON LEE, falsely represented that S&Teoul was a legitimate subcontractor performing work on the Parcel 2A and JTO-16 contracts at Camp Humphreys.

46. Neither SK E&C nor any members of the conspiracy disclosed the material fact that the S&Teoul subcontract was false and fraudulent, and was intended as a mechanism for facilitating the payment of bribes and kickbacks to a U.S. Government employee.

47. Further, neither SK E&C nor any members of the conspiracy disclosed the material fact that S&Teoul was not performing the work required by the subcontract.

48. In reliance on SK E&C's representations, the U.S. Department of Defense transferred contract funds to SK E&C, which facilitated the payment of kickback funds from SK E&C to S&Teoul.

49. SK E&C transferred U.S. government funds, obtained via payments made from the U.S. Department of Defense in Millington, Tennessee, to S&Teoul. To obtain these funds, SK E&C employees had submitted false certifications that S&Teoul had performed work on the YRP, although S&Teoul had not performed such work.

50. After laundered U.S. government contracting funds entered S&Teoul bank accounts, Seung-Ju Lee transferred the funds into accounts controlled by himself and Nishiie.

51. As part of the subcontract agreements, SK E&C sent S&Teoul over $2,000,000 between 2009 and 2012.

52. Between 2009 and 2012, S&Teoul sent much of this money in the form of bank transfers to accounts controlled by Seung-Ju Lee and Nishiie.

53. Nishiie maintained several bank accounts in other individuals' names, and used these bank accounts to effectuate and launder bribe payments from SK E&C to himself without using his real name.

54. The defendants and their co-conspirators used other shell companies to direct money from SK E&C to Nishiie.

### The Co-Conspirators Destroy Evidence of the S&Teoul Subcontract

55. In or about early 2015, the U.S. Army – Criminal Investigative Command, Defense Criminal Investigative Service, and Federal Bureau of Investigation, which are Federal Government agencies authorized by law to conduct criminal investigations, initiated investigations into bribery and kickbacks involving SK E&C, Nishiie, Seung-Ju Lee,

and others.  A federal grand jury began investigating the conduct at the same time. The Korean National Police also began a parallel investigation.

56. In or about March 2015, FED requested that SK E&C employees collect documents related to the S&Teoul contract in response to a request from investigators.

57. On or about March 25, 2015, the Korean National Police requested that SK E&C provide documents related to the S&Teoul subcontract.

58. Several days later, senior SK E&C employees, including defendant HYEONG-WON LEE, met at SK E&C offices in Seoul.  During this meeting, defendant HYEONG-WON LEE called C.W.K.  Defendant HYEONG-WON LEE ordered C.W.K. and others to destroy documents related to the S&Teoul subcontract.

59. On or about April 3, 2015, C.W.K. and another individual employed by SK E&C entered the SK E&C worksite at Camp Humphreys and loaded documents related to the S&Teoul subcontract into two vehicles.

60. Later that day, C.W.K. and the other individual drove to Gwangju, a city in South Korea.  The next morning, on or about April 4, 2015, C.W.K. and the other individual incinerated and destroyed documents related to the S&Teoul subcontract, to prevent their use in any pending and anticipated investigations or proceedings.

### The Co-Conspirators' Witness Tampering

61. On or about September 21, 2017, a grand jury in the District of Hawaii returned an indictment charging Nishiie and Seung-Ju Lee with crimes related to the scheme described herein.  Seung-Ju Lee learned of the indictment, and understood that he was legally obligated to appear.

62. From in or about October 2017 through in or about November 2017, defendant DONG-GUEL LEE and Seung-Ju Lee spoke on the telephone on several occasions.  During these calls, defendant DONG-GUEL LEE repeatedly discussed the investigation into SK E&C, Nishiie, and Seung-Ju Lee, and instructed Seung-Ju Lee not to cooperate with American investigators, travel to the United States to provide testimony, or appear in the United States in person.

63. On or about October 6, 2017, defendant DONG-GUEL LEE told Seung-Ju Lee that Nishiie had called him a few days earlier.  Defendant DONG-GUEL LEE said that Seung-Ju Lee "absolutely shouldn't come" to the United States, and that Nishiie had "begged" him to convey this message.

64. During this call, defendant DONG-GUEL LEE assured Seung-Ju Lee that he would never be extradited to the United States, and warned him again "You can't go.  If you go, everyone will be in danger."

65. During this call, defendant DONG-GUEL LEE told Seung-Ju Lee that "where you and Duane [Nishiie] can get stuck together is mostly money laundering." Defendant DONG-GUEL LEE later reiterated that "going there is not right . . . I keep worrying about that. That you would make such decisions."

66. On or about October 18, 2017, defendant DONG-GUEL LEE called Seung-Ju Lee. Defendant DONG-GUEL LEE then told Seung-Ju Lee that he had to approach the situation carefully, and "work this out in Korea." DONG-GUEL LEE continued, saying "You absolutely cannot go to America for now."

67. During this call, defendant DONG-GUEL LEE assured Seung-Ju Lee that SK E&C would ensure Seung-Ju Lee's wellbeing, stating that "if our company doesn't take care of you and stuff – that absolutely can't happen."

68. On or about December 1, 2017, Seung-Ju Lee was arrested by South Korean authorities.

### Overt Acts

69. In furtherance of the conspiracy, the defendants and their co-conspirators committed the following overt acts:

   a. On or about December 19, 2008, Nishiie recommended that FED award the LDUI-Parcel 2A contract to SK E&C.

   b. On or about March 31, 2011, SK E&C submitted a "Prompt Payment Certification," that is, Invoice #29, to FED, falsely certifying that S&Teoul had performed work on the LDUI-Parcel 2A contract and required a 300,000,000 won payment, and causing an electronic transmission in interstate and foreign commerce from the Republic of Korea to the Western District of Tennessee.

   c. On or about April 11, 2011, the United States Department of Defense transmitted funds by electronic wire to SK E&C's bank account, thus causing an electronic transmission in interstate and foreign commerce from the Western District of Tennessee to the Republic of Korea.

   d. In or about April 2015, defendant HYEONG-WON LEE ordered C.W.K. to destroy documents related to the S&Teoul subcontract.

   e. On or about April 4, 2015, C.W.K. and another individual destroyed documents related to the S&Teoul subcontract.

   f. On or about October 6, 2017, defendant DONG-GUEL LEE instructed Seung-Ju Lee not to cooperate with U.S. authorities.

   g. On or about October 18, 2017, defendant DONG-GUEL LEE instructed Seung-

9

Ju Lee not to cooperate with U.S. authorities.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Major Fraud Against the United States

70. The allegations contained in Paragraphs 1 through 17 and 20 through 69 are incorporated as if realleged herein.

71. From in or about 2008 and continuing through in or about 2017, in the Western District of Tennessee, and elsewhere, defendants

## HYEONG-WON LEE
and **DONG-GUEL LEE**

knowingly executed and attempted to execute a scheme and artifice with the intend to defraud the United States, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in any grant, contract, subcontract, and other form of Federal assistance, and in any procurement of property and services as a prime contractor with the United States and as a subcontractor and supplier on a contract in which there was a prime contract with the United States, where the value of such grant, contract, subcontract, and other form of Federal assistance was $1,000,000 or more.

### Purpose of the Scheme to Defraud

72. Paragraph 20 is incorporated as if realleged herein.

### Manner and Means of the Scheme to Defraud

73. Paragraphs 21 through 24 are incorporated as if realleged herein.

In violation of Title 18, United States Code, Section 1031 and 2.

## COUNTS THREE AND FOUR
### Wire Fraud

74. The allegations contained in Paragraphs 1 through 17 and 20 through 69 are incorporated as if realleged herein.

10

75. From in or about 2008 and continuing through in or about 2017, in the Western District of Tennessee, and elsewhere, defendant

### HYEONG-WON LEE

knowingly and with the intent to defraud, did devise and intend to devise a scheme and artifice to defraud the United States, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions with a duty to disclose, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice.

### Purpose of the Scheme to Defraud

76. Paragraph 20 is incorporated as if realleged herein.

### Manner and Means of the Scheme to Defraud

77. Paragraphs 21 through 24 are incorporated as if realleged herein.

### Acts in Execution of the Scheme to Defraud

| COUNT | "ON OR ABOUT" DATE | WIRE COMMUNICATION |
|-------|---------------------|--------------------|
| THREE | March 31, 2011 | SK E&C Submission of "Prompt Payment Certification," causing wire transmission from Republic of Korea to the Western District of Tennessee. |
| FOUR | April 11, 2011 | Department of Defense payment to SK E&C, causing wire transmission from Western District of Tennessee to the Republic of Korea. |

In violation of Title 18, United States Code, Section 1343 and 2.

11

## COUNT FIVE
### Money Laundering Conspiracy

78. The allegations contained in Paragraphs 1 through 17 and 20 through 69 are incorporated as realleged herein.

### Purpose of the Scheme to Defraud

79. Paragraph 20 is incorporated as if realleged herein.

### Manner and Means of the Scheme to Defraud

80. Paragraphs 21 through 24 are incorporated as if realleged herein.

81. From in or about 2008 and continuing through in or about 2017, in the Western District of Tennessee, and elsewhere, defendant

### HYEONG-WON LEE

did knowingly and intentionally combine, conspire, confederate and agree with other persons both known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct a financial transaction, affecting interstate and foreign commerce, knowing that the transaction is designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, and to transport, transmits, and transfers, and attempts to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity.

It is further alleged that the financial transaction involved the proceeds of specified unlawful activity, that is: bribery, in violation of 18 U.S.C. § 201, and wire fraud, in violation of 18 U.S.C. § 1343.

In violation of Title 18, United States Code, Section 1956(h).

## COUNT SIX
### Witness Tampering

82. The allegations contained in Paragraphs 1 through 17 and 20 through 69 are incorporated as realleged herein.

83. From in or about September 2017 through in or about November 2017, in the Republic of Korea and elsewhere, defendant

### DONG-GUEL LEE

knowingly used intimidation, threatened, and corruptly persuaded another person, and attempted to do so, and engaged in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of any person in an official proceeding, and cause and induce any person to withhold testimony, and withhold a record, document, and other object, from an official proceeding, and be absent from an official proceeding to which such person has been summoned by legal process, and attempted to do so, that is, defendant **DONG-GUEL LEE** dissuaded and attempted to dissuade Seung-Ju Lee from appearing and testifying in federal proceedings.

In violation of Title 18, United States Code, Sections 1512(b) and 2.

## FIRST NOTICE OF FORFEITURE

### (18 U.S.C. § 981(a)(1)(A)-(C); 28 U.S.C. § 2461 – Criminal Forfeiture)

84. The allegations contained in Counts One, Three, Four, and Six of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A)-(C), and Title 28, United States Code, Section 2461(c).

85. Pursuant to Title 18, United States Code, Section 981(a)(1)(A)-(C), and Title 28, United States Code, Section 2461(c), upon conviction of the offense(s) in violation of Title 18, United States Code, Section 371, set forth in Count One; Title 18, United States Code, Section 1343, set forth in Counts Three and Four; and Title 18, United States Code, Section 1512, set forth in Count Six of the Indictment; defendants

### HYEONG-WON LEE and
### DONG-GUEL LEE

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(A)-(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violations. The property to be forfeited includes, but is not limited to, the following: a sum of money, the amount to be determined, in United States currency representing the total amount of

13

proceeds traceable, directly or indirectly, to the offense(s) in violation of Title 18, United States Code, Sections 371, 1343, and 1512.

86. If any of the property described above, as a result of any act or omission of the defendant(s):

> a.  Cannot be located upon the exercise of due diligence;
> b.  Has been transferred or sold to, or deposited with, a third party;
> c.  Has been placed beyond the jurisdiction of the court;
> d.  Has been substantially diminished in value; or
> e.  Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

## SECOND NOTICE OF FORFEITURE

### (18 U.S.C. § 982 – Criminal Forfeiture)

87. The allegations contained in Count Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

88. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, defendant

## HYEONG-WON LEE,

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.  The property to be forfeited includes, but is not limited to, the following: a sum of money, the amount to be determined, in United States currency representing the total amount of proceeds traceable, directly or indirectly, to the offense, and any property traceable to such property.

89. If any of the property described above, as a result of any act or omission of the defendant[s]:

> a.  cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

**A TRUE BILL:**

_____

**F O R E P E R S O N**

**DATE:** _____

_____

**SANDRA MOSER**
**Acting Chief, Fraud Section**
**Criminal Division, U.S. Dept. of Justice**

Justin D. Weitz
Assistant Chief
Securities and Financial Fraud Unit

_____

**D. MICHAEL DUNAVANT**
**United States Attorney**
**Western District of Tennessee**

15